**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> DEMARIO JARAIL WRIGHT, ) <br> ) <br> Defendant. ) | Case No. 07-CR-0038-TCK-1 <br><br> USM No.: 10128-062 |

**OPINION AND ORDER**

Before the Court is Defendant Demario Jarail Wright's second motion for reduction in sentence, pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (Dkt. 48). The Government filed a response in opposition to the motion (Dkt. 53), and Wright filed a reply (Dkt. 54).[1] Wright seeks a reduction of his 471-month sentence, asserting that amendments to 18 U.S.C. § 924(c) made by the First Step Act of 2018 ("FSA") created a significant disparity between the mandatory minimum sentence he received for his second § 924(c) conviction and the mandatory minimum sentence he likely would face if sentenced today for that same conviction; that he was young when he committed the offense conduct; that a reduction of his unusually long sentence would be consistent with the United States Sentencing Commission's policy statement in USSG § 1B1.13(b)(6); that he has completed the National Gang Unit Drop-out Program; and that consideration of applicable factors under 18 U.S.C. § 3553(a) support his request for a reduced sentence. Dkts. 48, 54. The Government urges the Court to deny the motion, arguing that even if Wright has presented extraordinary and compelling reasons warranting a reduction in sentence, Wright's "offense conduct, continuing record of serious disciplinary infractions, and high risk of recidivism all weigh

---

[1] Because Wright appears without counsel, the Court liberally construes his motion and reply. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Unless otherwise indicated, the Court's citations to electronically filed documents refer to the CM/ECF header pagination.

strongly against his release" and, if the Court grants the motion, any reduction in sentence should be limited to "the 25-year sentence [Wright] would face if convicted today on the three charges to which he pleaded guilty." Dkt. 53.

## I. Background

In 2006 and 2007, Wright committed a series of robberies of Tulsa businesses. Presentence Report ("PSR") ¶¶ 1-7, 13-16. A superseding indictment filed in April 2007 charged Wright with five counts of Hobbs Act robbery, in violation of 18 U.S.C. § 1951, for two armed robberies committed on March 2, 2007, at a Kwick Mart convenience store (count one) and a Taco Bueno restaurant (count three), one armed robbery committed on March 5, 2007, at a Dollar General store (count five), one robbery committed on January 17, 2007, at a Sassy's novelty shop (count seven), and one robbery committed on January 20, 2006, at El Shadai International (count eight); three counts of knowingly possessing a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. §§ 924(c), for brandishing and discharging a gun during the Kwick Mart robbery (count two), brandishing a gun during the Taco Bueno robbery (count four), and brandishing a gun during the Dollar General robbery (count six); and one count of being a felon in possession of ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), for possessing two .25 caliber Winchester rounds on March 2, 2007 (count nine). Dkt. 13.

In May 2007, Wright pleaded guilty to the Dollar General robbery (count five) and the § 924(c) violations related to the Kwick Mart and Taco Bueno robberies (counts two and four). Dkt. 19-2. In his plea agreement, Wright stipulated that he had discharged a firearm during the Kwick Mart robbery and that he had brandished a firearm during the Dollar General robbery. *Id.* at 12. Applying the 2006 edition of the United States Sentencing Guidelines Manual, the United States Probation Office prepared a Presentence Report. PSR ¶ 20. The Probation Office assessed four criminal history points under USSG § 4A1.1(c) based on Wright's prior criminal convictions and

added two criminal history points under USSG § 4A1.1(d) because Wright committed the offense conduct while under a criminal justice sentence, resulting in six criminal history points, a Criminal History Category of III,[2] and an advisory guideline sentencing range of fifty-one to sixty-three months' imprisonment for the Dollar General robbery (count five). PSR ¶¶ 35-42, 55.[3] Applying USSG § 2K2.4(b), the Probation Office determined that the advisory guideline sentences for the § 924(c) violations were the minimum terms of imprisonment required by statute: 120 months' imprisonment for discharging a firearm during the Kwick Mart robbery (count two) and 300 months' imprisonment for brandishing a firearm during the Taco Bueno robbery (count four); both terms were statutorily required to be served consecutively to any other term of imprisonment. *Id.* at ¶ 53.

In August 2007, this Court sentenced Wright to a total term of imprisonment of 471 months: 120 months for the first § 924(c) conviction (count two); 300 months for the second § 924(c) conviction (count four); and fifty-one months for the Dollar General robbery (count five). Dkt. 25 at 2. The Court ordered that the terms imposed for counts two and four "shall run

---

[2] The Court notes that, effective November 1, 2023, the Sentencing Commission amended USSG § 4A1.1(d) to eliminate "status points" for offenders with fewer than seven criminal history points. *See* USSG Supplement to App. C at 240-41. But that amendment does not change Wright's guideline calculation. As previously discussed, Wright's prior convictions resulted in four criminal history points and two "status points" were added under USSG § 4A1.1(d) because he was under a criminal justice sentence when he committed the armed robberies. PSR at ¶¶ 40-41. This resulted in a Criminal History Category of III. *Id.* at ¶ 42. If sentenced today, without the two status points, Wright would still have a Criminal History Category of III because four criminal history points also result in a Criminal History Category of III. USSG Ch. 5, Pt. A (Sentencing Table).

[3] Wright's prior convictions included (1) a misdemeanor conviction for carrying a weapon at age eighteen; (2) a felony conviction for second degree burglary at age nineteen; (3) a municipal conviction for possessing marijuana at age nineteen; (4) felony convictions for unlawful possession of a controlled drug (cocaine) and resisting an officer at age twenty; and (5) a municipal conviction for larceny-merchandise from a retailer. PSR ¶¶ 35-39.

consecutively to each other and any other term of imprisonment." *Id.* The Court also imposed a total five-year term of supervised release. *Id.* at 3. On the Government's motion, the Court dismissed counts one, three, six, seven, eight, and nine of the superseding indictment and the original indictment. *Id.* at 1.

In October 2020, Wright moved for a reduction in sentence, citing the FSA and his unusually long sentence. Dkt. 41. The Government opposed that motion, and this Court denied it. Dkts. 46, 47. In denying the motion, the Court determined that even if Wright's lengthy sentence and age at the time of the offense could be considered an extraordinary and compelling reason to warrant a reduction in sentence, consideration of § 3553(a) factors and Wright's individualized circumstances weighed against granting a reduction in sentence. Dkt. 47. The Court expressly noted Wright's extensive disciplinary record that included twenty-one separate disciplinary referrals, his limited attempts at rehabilitation, and his failure to obtain a GED. *Id.* at 10 & n.3. The Court further noted, however, that the denial of his first motion did not preclude Wright from again seeking a reduction in sentence. *Id.*

Wright now has served a little over seventeen years of his thirty-nine-year sentence. Dkt. 53 at 2. He now has accrued a total of twenty-eight separate disciplinary referrals. Dkt. 53-1; Bureau of Prisons ("BOP") Inmate Discipline Data (April 17, 2025).[4] Wright committed the most serious recent infractions, on September 23, 2024, when he was found guilty of assaulting another inmate without serious injury, and on April 1, 2025, when he was found guilty of fighting with another inmate. Dkt. 53-1 at 1; BOP Inmate Discipline Data (April 17, 2025). Wright presently

---

[4] The BOP disciplinary records submitted by the Government, Dkt. 53-1, reflect Wright's infractions through September 16, 2024. The Court obtained more recent BOP records from the Probation Office, specifically, Wright's Discipline Data and Education Data, and the Discipline Data reflects two infractions while the instant motion was pending, a minor infraction in January 2025 and fighting with another inmate in April 2025.

is imprisoned at USP Coleman II with a projected release date of November 5, 2042. *See* Federal Bureau of Prisons Inmate Locator, https://www.bop.gov/inmateloc, (query #10128-062), last visited April 16, 2025.

## II. Applicable law

In December 2018, Congress enacted the FSA which, in part, modified 18 U.S.C. § 3582(c)(1) to allow a defendant to bring a motion for reduction of sentence where "extraordinary and compelling reasons warrant such a reduction[.]" 18 U.S.C. § 3582(c)(1)(A)(i). Before the FSA, only the BOP could file a motion for reduction of sentence on behalf of a defendant. *United States v. Maumau*, 993 F.3d 821, 824 (10th Cir. 2021). As amended by the FSA, § 3582(c)(1)(A) provides, in relevant part:

> (c) Modification of an Imposed Term of Imprisonment. –The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in § 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction; or
>
> . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A). Under § 3582(c)(1)(A)(i),

> a district court may . . . grant a motion for reduction of sentence, whether filed by the Director of the BOP or a defendant, only if three requirements are met: (1) the

5

> district court finds that extraordinary and compelling reasons warrant such a reduction; (2) the district court finds that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission; and (3) the district court considers the factors set forth in § 3553(a), to the extent that they are applicable.

*Maumau*, 993 F.3d at 831. In *Maumau*, the United States Court of Appeals for the Tenth Circuit ("Tenth Circuit") concluded that "district courts . . . have the authority to determine for themselves what constitutes 'extraordinary and compelling reasons,' but that this authority is effectively circumscribed by . . . the requirement that a district court find that a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id.* at 834.

The Sentencing Commission's applicable policy statement requires that "extraordinary and compelling reasons" warrant a sentence reduction and that the defendant not pose a danger to the public. USSG § 1B1.13(a)–(b). The policy statement was amended on November 1, 2023, to reflect Congress's empowerment of federal courts, through the FSA, to adjudicate defendant-initiated motions for reductions in sentences. USSG § 1B.13, amend. 814. Amendment 814 to the Sentencing Commission policy statement also expanded the list of extraordinary and compelling reasons justifying a reduction in sentence. *See id.*; 2023 Amendments in Brief, U.S. Sent'g Comm'n, https://www.ussc.gov/sites/default/files/pdf/amendment-process/amendments-in-brief/AIB_814.pdf (last visited April 17, 2025).

As amended, the policy statement identifies six categories of "extraordinary and compelling reasons" for a reduction in sentence. USSG § 1B1.13(b)(1)-(6), amend. 814. The first four categories pertain to a defendant's: (1) medical circumstances; (2) advanced age and deteriorating health in combination with the amount of time served; (3) family circumstances; and (4) victimization by correctional staff while in custody. *Id.* A fifth catch-all category exists for a "circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those

6

described in paragraphs (1) through (4)." USSG § 1B1.13(b)(5). The Commission also issued a sixth category that applies to defendants who received an unusually long sentence and have served at least ten years in custody, when a change in law other than a non-retroactive amendment to the guideline manual would produce a gross disparity between that sentence and the sentence likely to be imposed today. USSG § 1B1.13(b)(6). Consistent with Congress's directive, the policy statement provides that rehabilitation of the defendant is not an extraordinary and compelling reason but "may be considered in combination with other circumstances in determining whether and to what extent a reduction" in sentence is warranted. USSG § 1B1.13(d). An extraordinary and compelling reason need not be unforeseen at the time of sentencing to warrant a reduction in sentence. USSG § 1B1.13(e). As the party seeking discretionary relief, a defendant bears the burden to establish that a reduction in sentence is warranted under 18 U.S.C. § 3582(c). *United States v. Crespin*, No. 23-2111, 2024 WL 3084972 at *5 (10th Cir. June 21, 2024) (unpublished);[5] *United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016).

### III. Analysis

A. **Exhaustion of administrative remedies**

The exhaustion requirement in § 3582(c)(1(A) is a non-jurisdictional claim-processing rule, *see United States v. Hemmelgarn*, 15 F.4th 1027, 1030-31 (10th Cir. 2021), and the Government does not oppose the motion on the ground that Wright failed to exhaust administrative remedies, *see* Dkt. 53. Regardless, the Court finds, based on Wright's representations in his motion, that Wright exhausted administrative remedies by sending a letter to the warden of his

---

[5] The Court cites all unpublished decisions herein for their persuasive value. Fed. R. App. P. 32.1; 10th Cir. R. 32.1.

facility on August 20, 2024, and by waiting more than thirty days after the warden's receipt of the letter to file the instant motion. Dkt. 48 at 2.

**B.      Existence of extraordinary and compelling reasons**

Wright contends that the combined force of his age at the time of the crimes (twenty-one years old), the unusual length of his sentence (471 months' imprisonment), the extreme disparity between the mandatory sentence he received for his second § 924(c) conviction (300 months) and the sentence he likely would receive for the second § 924(c) conviction under current law (eighty-four months), and his completion of the National Gang Unit Drop-Out Program provides an extraordinary and compelling reason to reduce his sentence. Dkt. 48, at 2-5. The Court agrees.

When this Court sentenced Wright, the law required this Court to impose a mandatory minimum prison sentence of 300 months, or twenty-five years, for Wright's second § 924(c) conviction—even though the offense conduct resulting in both § 924(c) convictions consisted of Wright discharging a gun at the Kwick Mart robbery and brandishing a gun at the Taco Bueno robbery roughly thirty minutes later on the same day, and even though both convictions resulted from a single prosecution. 18 U.S.C. § 924(c)(1)(C) (2007); *Deal v. United States*, 508 U.S. 129, 132 (1993). But "[s]ection 403(a) of the First Step Act amended § 924(c) so that the twenty-five-year mandatory minimum sentence for a second or subsequent § 924(c) conviction of § 924(c) applies only if the defendant's first § 924(c) conviction is final at the time of the second or subsequent § 924(c) conviction." *Maumau*, 993 F.3d at 824; *see also* 18 U.S.C. § 924(c)(1)(C)(i). And, while the concurring opinion in *Maumau* suggested that "[a] long sentence derived from [§ 924(c)] stacking cannot, by itself, be an 'extraordinary and compelling' reason for sentence reduction," because Congress "chose *not* to make [section 403(a)] retroactive," that same opinion recognized that "a district court may consider the legislative change to the stacking provision . . . in the context of an individualized review of a movant's circumstances." *Maumau*, 993 F.3d at

838 (Tymkovich, C.J., concurring); *see also United States v. McCoy*, 981 F.3d 271, 286 (4th Cir. 2020) ("The fact that Congress chose not to make § 403 of the First Step Act categorically retroactive does not mean that courts may not consider that legislative change in conducting their individualized reviews of motions for compassionate release under § 3582(c)(1)(A)(i)."); *United States v. McGee*, 992 F.3d 1035, 1048 (10th Cir. 2021) (applying *McCoy*'s reasoning to conclude that district court could consider whether "a defendant's unique circumstances . . . in combination with the mandatory sentence [the defendant] received under § 841(b)(1)(A), constitute 'extraordinary and compelling reasons' for a sentence reduction under § 3582(c)(1)(A)" even though Congress chose not to make the FSA's "reduction of the mandatory minimum sentence under § 841(b)(1)(A) from life to 25 years" retroactive to all defendants previously sentenced under that penalty provision).

More to the point, *Maumau* affirmed a district court's "conclusion that a combination of factors warranted relief, including: [the defendant's] young age at the time of sentencing; the incredible length of his stacked mandatory sentences under § 924(c); the First Step Act's elimination of sentence-stacking under § 924(c); and the fact that [the defendant], if sentenced today . . . would not be subject to such a long term of imprisonment." 993 F.3d at 837 (alterations added; internal quotation marks omitted). Thus, district courts in this circuit have considered the length of a defendant's sentence and the FSA's elimination of sentence-stacking under § 924(c), along with the defendant's individualized circumstances, to determine whether extraordinary and compelling reasons support a reduction in sentence. *See, e.g.*, *United States v. Barkley*, Case No. 04-cr-119-JDR-1, 2024 WL 5233183, at *4 (N.D. Okla. Dec. 27, 2024) (unpublished) (concluding defendant established extraordinary and compelling reasons for reduction in sentence based on his unusually long sentence derived from stacking a 300-month sentence from a second § 924(c) conviction, the extreme disparity between the sentence imposed and the sentence he likely would

face after the FSA amendments, his advanced age of 64 years, the BOP's determination that he had a low risk of recidivism, and his rehabilitation efforts); *United States v. Brooks*, 717 F. Supp. 3d 1087, 1092, 1099 (N.D. Okla. 2024) (finding the existence of extraordinary and compelling reasons to reduce a defendant's sentence based on the defendant's relative youth at the time of the offenses, the unusual length of his total sentence that resulted from the stacking of multiple § 924(c) sentences, and the extreme disparity between the sentence the defendant received and the one he would have faced if sentenced when he filed his motion for reduction in sentence); *United States v. Tuakalau*, 598 F. Supp. 3d 1222, 1226 (D. Utah 2022) (concluding defendant's "age [early twenties], his long sentence, his rehabilitation, and the FSA amendments," considered collectively, "form[ed] an extraordinary and compelling reason to reduce his sentence"); *United States v. Curtis*, No. 01-CR-0003-TCK, 2020 WL 6484185, at *2, 9 (N.D. Okla. Nov. 4, 2020) (unpublished) (finding the existence of extraordinary and compelling reasons to reduce a defendant's sentence based on the defendant's "conviction at a relatively young age [thirty-two years old], receiving what amounted to a life sentence, the disparity between his sentence and those of his codefendants, the disparity of sentence between his sentence and those sentenced for similar crimes after the First Step Act, and his rehabilitation efforts").

      As Wright contends, several factors present in this case are like those present in other cases that have considered the impact of the FSA's non-retroactive amendments to § 924(c)'s penalty provisions: Wright was twenty-one years old at the time of the offense conduct, he received an extraordinarily long sentence based on § 924(c) sentence-stacking, and he would face a significantly shorter sentence if he were sentenced today based on the FSA's amendment to § 924(c). In addition, Wright's individualized circumstances show he began using marijuana when he was fifteen, his parents divorced when Wright was sixteen years old, he completed high school only through the tenth grade, he was briefly employed as a restaurant worker before his arrest, and

he was under the influence of marijuana and Phencyclidine when he committed the offense conduct. PSR ¶¶ 45, 49-51. Wright's lack of education, substance abuse, apparent lack of employment prospects does not excuse his criminal behavior. Nonetheless, the Court finds, in its discretion, that the collective force of these individualized circumstances, in addition to the nearly forty-year sentence Wright received at age twenty-one for committing two armed robberies in the span of two days in March 2007 that resulted in no fatalities, provides an extraordinary and compelling reason to support a reduction in sentence.

C.       **Consistency with the applicable policy statement: USSG § 1B1.13**

Wright contends that reducing his sentence is consistent with the Sentencing Commission's USSG § 1B1.13(b)(6). Dkt. 54 at 2-3. Subsection (b)(6) provides in full:

> UNUSUALLY LONG SENTENCE.—If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

USSG § 1B1.13(b)(6). Wright argues his circumstances "fall neatly within" the criteria described in subsection (b)(6) because his 471-month prison sentence is unusually long, he has served more than seventeen years of his sentence, and the change in the law eliminating § 924(c) sentence-stacking produced an "extreme" disparity between the sentence he is serving for his second § 924(c) conviction (300 months) and the sentence likely to be imposed under current law (eighty-four months). Dkt. 54, at 2. The Government does not dispute the existence of these circumstances. *See* Dkt. 53 at 7 (acknowledging that "if sentenced today for the three counts to which he pleaded guilty, [Wright] would be eligible for a shorter sentence," specifically an eighty-four-month sentence for his second § 924(c) conviction). Instead, the Government makes two

11

arguments against finding that a reduction in sentence would be consistent with USSG § 1B1.13(b)(6); neither is persuasive. First, the Government argues that USSG § 1B1.13(b)(6) "conflicts with § 3582(c)(1)(A)'s plain text, context, and purpose" and is therefore "invalid." Dkt. 53 at 4-6. This Court has squarely addressed and rejected this argument. *See Brooks*, 717 F. Supp. 3d at 1093-97. In *Brooks*, this Court found that the Sentencing Commission's adoption of subsection (b)(6) was a proper exercise of authority that Congress delegated to the Commission in 28 U.S.C. § 994(t); found that subsection (b)(6)'s description of extraordinary and compelling reasons is consistent with Tenth Circuit precedent; and rejected the Government's challenge to the validity of subsection (b)(6) based on Tenth Circuit precedent and the persuasiveness of the Commission's official commentary to Amendment 814. *Id.*; *see also Barkley*, 2024 WL 5233183, at *5 (discussing *Brooks* and more recent case law from other circuits agreeing with Government's position that USSG § 1B1.13(b)(6) is invalid, but rejecting the Government's challenge to the validity of subsection (b)(6) "because the reasoning in existing Tenth Circuit precedent (*e.g.*, *Maumau* and *McGee*) aligns with the policy statement"); *United States v. Miller*, Case No. 12-CR-00050-GKF-7, 2024 WL 3043528, at *5 n.4 (N.D. Okla. June 18, 2024) (unpublished) (finding *Brooks*'s reasoning persuasive and rejecting Government's assertion that subsection (b)(6) is invalid). This Court again rejects the Government's argument that USSG § 1B1.13(b)(6) is invalid, for the reasons more fully explained in *Brooks*.

Second, the Government argues that consideration of Wright's individualized circumstances "warrant rejecting his reliance on the First Step Act's non-retroactive changes to the stacking provisions of § 924(c)" as a change in law contemplate in USSG 1B1.13(b)(6). Dkt. 53 at 6-7. As the Court understands this argument, the Government contends that Wright cannot show that the FSA amendments to § 924(c) resulted in a gross disparity between the sentence he received and the one he likely would face today because, had the Government predicted the FSA's

12

2018 amendment to § 924(c) when the Government crafted the terms of Wright's plea agreement in 2007, the Government "today" would not permit Wright "to plead guilty to only one robbery and two § 924(c) charges, where strong evidence would have supported his conviction for the additional crimes" that the Government moved to dismiss pursuant to the plea agreement. *Id.* at 7.  Thus, in the Government's view, "[i]f convicted of the offenses charged in the superseding indictment today, Wright would face a guideline range comparable to or greater than that he faced in 2007," thereby precluding Wright from "show[ing] a gross disparity between the sentence he is serving and the sentence he would be likely to receive today." *Id.*  This argument is creative, but the Court declines the Government's invitation to walk through the looking glass and speculate about different decisions prosecutors might have made in 2007 had they been able to predict that Congress would eliminate the harsh effect of § 924(c) sentence-stacking in 2018.  Were the Court to accept that invitation, it might also have to speculate about whether Wright, sharing that same ability as the Government to predict the future, would have agreed to plead guilty to a third § 924(c) violation so that he could make a stronger showing under the Sentencing Commission's 2023 amendment adding subsection (b)(6) to its policy statement.  Instead of entering the realm of what-if, the Court applies subsection (b)(6) to the facts of this case, considering the sentence that was imposed for Wright's three convictions resulting from the parties' plea agreement and the sentence Wright likely would face if sentenced under current law for the same three convictions.

   With these arguments addressed, the Court agrees with Wright that his circumstances fit within subsection (b)(6): he received an unusually long sentence based on the stacking of § 924(c) sentences for two convictions obtained during a single prosecution, he has served more than seventeen years of that sentence, and the FSA's amendments to § 924(c)'s penalty provisions is a change in the law that produced a gross disparity between the length of his mandatory minimum 300-month sentence for his second § 924(c) conviction and the mandatory minimum eighty-four

month sentence he would face today for the same conviction. Considering Wright's individualized circumstances, as just discussed in section III.B, the Court finds and concludes that a reduction in sentence would be consistent with USSG § 1B1.13(b)(6).

### D.     Consideration of 18 U.S.C. § 3553(a) factors

Lastly, the Court must consider the factors set forth in 18 U.S.C. § 3553(a), to the extent they are applicable, before it may grant Wright's request for reduction in sentence. 18 U.S.C. § 3582(c)(1)(A); *Maumau*, 993 F.3d at 831. Those factors include: "the nature and circumstances of the offense and the history and characteristics of the defendant"; "the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense . . . to afford adequate deterrence to criminal conduct . . . [and] to protect the public from further crimes of the defendant"; and "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a). "[E]vidence of postsentencing rehabilitation may be highly relevant to several of the § 3553(a) factors." *Pepper v. United States*, 562 U.S. 476, 491 (2011). "Postsentencing rehabilitation may also critically inform a sentencing judge's overarching duty under § 3553(a) to 'impose a sentence sufficient, but not greater than necessary' to comply with the sentencing purposes set forth in § 3553(a)(2)." *Id.* A defendant's "postsentencing conduct also sheds light on the likelihood that he will engage in future criminal conduct, a central factor that district courts must assess when imposing sentence." *Id.* at 492.

It is at this third step of the analysis that Wright stumbles. This Court closely considered the § 3553(a) sentencing factors only four years ago when it denied Wright's first motion for a reduction in sentence. Dkt. 47 at 8-10. The Court determined that the applicable sentencing factors and Wright's postsentencing conduct weighed against a reduction in sentence, reasoning:

14

>    Those factors demonstrate that Wright remains a significant danger to the community. A reduction in his sentence would not serve the interests of justice but would serve instead to minimize the severity of his offense. His serious offense conduct, including firing two rounds at a cashier who refused to sell him cigarettes or empty the cash register, weighs against his release.
>
>    Next, Wright's sentence, although severe, was the result of an advantageous plea bargain, in which the government agreed (1) not to initiate additional criminal charges based on its investigation; (2) to dismiss six counts of the indictment, including two additional robberies and a third § 924(c) charge; (3) to recommend a three-level reduction for acceptance of responsibility; and (4) to recommend the low end of the guidelines range. *Id.* at ¶¶ 10-11.
>
>    Third, despite Wright's youth, he had already accrued a serious criminal history by the time of this conviction at age 21, including two felony convictions, and he committed the federal offenses while an application to revoke his state suspended sentences was pending. *Id.* at ¶¶ 35-39. In between the robberies charged in the indictment, Wright was shot multiple times with a .45 caliber handgun. *Id.* at ¶ 47.
>
>    Finally, Wright's conduct since being incarcerated, demonstrates that he has not been rehabilitated, and if released, would continue to pose a danger to the community. While in the Bureau of Prisons, Wright has consistently committed serious and violent disciplinary infractions, from possessing a dangerous weapon to assaulting staff and another inmate. Doc. 46, Ex. 1 at 6-12. He has refused to participate in needed rehabilitation. *Id.* at 1. In light of his criminal and disciplinary history, the Bureau of Prisons classifies Wright as at high risk of recidivism. *Id.* at 2.
>
>    Therefore, considering the history and characteristics pursuant to 18 U.S.C. § 3553(a)(1), Wright's conduct while incarcerated demonstrates the danger he continues to pose to the community, and warrants denial of his motion.

Dkt. 47 at 9-10. As previously stated, the Court further noted that "Wright's limited attempts at rehabilitation fall short of the exemplary conduct this Court has required of other defendants when reducing sentences to time served. Wright has not completed his GED and has incurred other infractions." *Id.* at 10 n.3.

Just over three years later, Wright filed the instant motion. But the record shows little, if any, improvement in his postsentencing conduct and attempts at rehabilitation. Addressing the § 3553(a) sentencing factors and his postsentencing conduct in relation to his instant motion, Wright does not refute that his offenses were "dangerous and serious," but he notes that "no clerk suffered

15

physical injury." Dkt. 54 at 9. He contends that he received a "substantial sentence for his first § 924(c) conviction and a greater than necessary sentence for the second § 924(c) conviction." *Id.* Wright further contends that his history and characteristics favor a reduction in sentence, citing his youth and gang affiliation at the time of the offense conduct and his renouncement of his gang affiliation in 2016. *Id.* at 9-10. Notably though, Wright says nothing about that part of his history and characteristics showing that he had more than one serious criminal conviction by the age of twenty-one and that he was facing revocation of suspended state court sentences when he committed his federal offenses.

Wright candidly admits, however, that his "post-sentencing rehabilitation history is poor and presents a somewhat negative picture." *Id.* at 10. He suggests that at least some of his disciplinary infractions for fighting resulted from his decision to renounce his gang affiliation and that each of his disciplinary infractions were met with administrative sanctions. *Id.* at 10-11. He also suggests that a sentence of 255 months is more than adequate to deter criminal conduct because it exceeds "the national and Tenth Circuit average sentence of '244 months' . . . for the most serious offense of first degree 'murder.'" *Id.* at 11. Assuming the truth of Wright's representations that he has renounced any gang affiliation and has completed a National Gang Unit Drop-Out Program, the Court commends him for doing so.[6] But BOP records reflect that Wright has done little else to meaningfully advance his rehabilitation. Wright took GED classes in 2008, 2011, 2022, and 2024, but apparently has not yet obtained his GED. *See* BOP Inmate Education Data (April 17, 2025), at 1. And Wright, who bears the burden to show why a reduction in sentence is warranted submitted no "additional evidence" of his rehabilitation efforts beyond his allegation

---

[6] Wright describes the National Gang Unit Drop-Out Program and alleges he completed it but submits no certificate or other evidence to support his allegation, either with his motion or his reply. Dkts. 48, 54.

that he completed the National Gang Unit Drop-Out Program. Instead, he suggests he has been unable to participate in rehabilitation programs because of the BOP's "chronic understaffing" and routing lockdowns. Dkt. 54 at 12. Moreover, as previously discussed, Wright's disciplinary record demonstrates that he continues to struggle with anger management by assaulting and fighting with other inmates, most recently on April 1, 2025, while the instant motion was pending. Dkt. 53-1; BOP Inmate Discipline Data (April 17, 2025).

Contrary to Wright's position, the § 3553(a) factors, on balance, do not favor reducing his total sentence to 255 months. Dkt. 54 at 1, 11. Wright is correct that a total sentence of 255 months would eliminate the disparity between the sentence he received for the second § 924(c) conviction and the sentence that likely would be imposed today for the same conduct. *Id.* But, as *Peppers* suggests, postsentencing rehabilitation is highly relevant to this Court's consideration of the factors set forth in § 3553(a) and "sheds light on the likelihood that [Wright] will engage in future criminal conduct." 562 U.S. at 492. And Wright's extensive record of disciplinary misconduct, particularly the infraction of fighting with another inmate that he committed since filing the instant motion, reinforces this Court's previous conclusion that that likelihood remains high.

That said, the Court is not persuaded by the Government's argument that the Court should deny Wright's motion outright because his "continuing record of serious disciplinary infractions, and high recidivism all weigh strongly against his release." Dkt. 53 at 1. The Court agrees with the Government that immediate release is not appropriate. But even though a motion for reduction in sentence under § 3582(c)(1)(A)(i) is sometimes referred to as a motion for compassionate release, this statute "in fact speaks of sentence reductions." *United States v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020) (describing "compassionate release" as "a misnomer" and explaining that the statute permits courts broad discretion to determine whether and to what extent to reduce a

prison term). The Government recognizes this distinction by suggesting that if a reduction is warranted, it should be limited to a total sentence of twenty-five years. Dkt. 53 at 1.

Under the facts and circumstances of this case, the Court finds and concludes that only limited relief is warranted and that reducing Wright's count four sentence from 300 months to 240 months, resulting in a total reduced sentence of 411 months, will maintain a sentence that is "sufficient, but not greater than necessary" to comply with the sentencing purposes set forth in § 3553(a).

### IV. Conclusion

Considering Wright's age at the time of the offense conduct, his individualized circumstances, the unusual length of his sentence, and the gross disparity between the sentence imposed for his second § 924(c) conviction and the sentence he likely would receive today if convicted of the same conduct, the Court finds extraordinary and compelling reasons to grant Wright's motion for reduction of sentence. However, on consideration of the applicable § 3553(a) sentencing factors and Wright's postsentencing conduct, the Court finds that only a limited reduction is warranted. The Court therefore reduces the sentence imposed as to count four from 300 months to 240 months, thereby reducing Wright's total sentence from 471 months to 411 months. The sentences originally imposed as to counts two and five and the order that the sentences as to counts two and four shall be served consecutively to each other and all other

sentences imposed remain unchanged. The previously imposed fine, order of restitution, terms of supervised release, and conditions of supervision also remain unchanged.[7]

**IT IS THEREFORE ORDERED** that Wright's motion for reduction of sentence, pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (Dkt. 48) is **granted**. Wright's sentence as to count four is hereby reduced from 300 months to 240 months and his total sentence is hereby reduced to 411 months.

**IT IS FURTHER ORDERED** that the sentences originally imposed as to counts two and five and the order that the sentences as to counts two and four shall be served consecutively to each other and all other sentences imposed remain unchanged. The order of restitution, previously imposed fine, terms of supervised release, and conditions of supervision also remain unchanged.

**IT IS FURTHER ORDERED** that the Clerk of Court shall email a copy of this Order to the United States Probation Office.

**IT IS SO ORDERED** this 25th day of April 2025.

TERENCE C. KERN
United States District Judge

---

[7] Pursuant to 18 U.S.C. § 3582(c)(1)(A), the Court may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment.